Dena C. Sharp (SBN 245869)
dsharp@girardsharp.com
Adam E. Polk (SBN 273000)
apolk@girardsharp.com
Sarah R. London (SBN 267083)
slondon@girardsharp.com
Andrew R. Kaufman (pro hac to be filed)
akaufman@girardsharp.com
Muriel Kenfield-Kelleher (pro hac to be filed)
mkelleher@girardsharp.com
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

Micha Star Liberty
micha@libertylaw.com
**LIBERTY LAW**
California Bar No. 215687
1999 Harrison Street, Ste. 1800
Oakland, CA 94612
Phone: 510–645–1000

Margaret E. Mabie (pro hac to be filed)
Margaretmabie@marsh.law
**MARSH LAW FIRM PLLC**
31 Hudson Yards, 11th Floor
New York, New York 10001
Telephone: (315) 296- 9046

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

JANE DOE 1, on behalf of herself and all others similarly situated,

Plaintiff,

v.

X.AI CORP., a Nevada Corporation, and X.AI LLC, a Nevada Limited Liability Company,

Defendants.

Case No.:

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff, on her own behalf and on behalf of all others similarly situated, alleges as follows:

**INTRODUCTION**

1. It is a federal crime to knowingly produce or distribute child pornography. Such material includes images that are "created, adapted, or modified" to make an identifiable minor appear to engage in sexually explicit conduct. 18 U.S.C. § 2256(8)(C). An identifiable minor includes a person whose image as a minor was used to create, adapt, or modify the depiction. *Id.* § 2256(9).

2. Defendants (together "xAI") created a generative artificial intelligence model named Grok. Grok operates as part of Defendants' "X" social media service, answering users' questions and fulfilling requests. To entice more users of both X and Grok, xAI designed Grok to respond to prompts to create and distribute sexual content using an identifiable person's real image or video.

3. For a person of any age, Grok's images constitute a gross misuse of a person's image and a flagrant invasion of their privacy.

4. For a child, however, Grok's nudified images of children are child sexual abuse material ("CSAM"), the production, possession, and transmittal of which violates federal criminal law and provides civil causes of action under 18 U.S.C. §§ 2255 and 2252A(f).

5. For Plaintiff, xAI's conduct is even worse. Plaintiff is an identified victim of child pornography tracked by the Federal Bureau of Investigation's Child Exploitation Notification Program. Using pre-existing and known CSAM involving Plaintiff, Grok generated new CSAM, compounding the already extensive harm Plaintiff suffered.

6. While its competitors enacted guardrails that directly prevent the use of their products to create nonconsensual sexual images of real persons, xAI chose to do the opposite. Worse, Grok did not just generate CASM. By embedding Grok directly within its social media interface (X), xAI invented a product that both generates the content and instantly distributes it publicly – unlike other platforms where generation and distribution are separate tools or separate steps.

7. Instead of taking appropriate precautions to prevent the creation of nonconsensual sexual images, including CSAM, xAI and its founder Elon Musk chose to capitalize and profit from predators' appetite for non-consensual sexual images and videos of real people, including children.

8. This form of sexual abuse has devastating psychological and real-life consequences for victims. Such harms continue indefinitely, because once disseminated online, images can be replicated multiple times, shared and stored on privately-owned devices, making them difficult to locate and remove. Because Grok's terms treat public X posts and Grok's own outputs as training data by default, publicly posting an image does not just expose it to viewers, but also feeds directly into the pipeline xAI uses to train and improve its model and thereby generate further images.

9. For Plaintiff, who already has suffered the harms from the production and dissemination of child pornography concerning her, the harm from Grok is only compounded.

10. In just eleven days, from December 29th, 2025 to the end of January 8th, 2026, xAI created and posted publicly on X more than approximately 3 million sexualized images, including over 23,000 images that appear to depict children.[1] The scope of xAI's non-public dissemination of child pornography is not yet quantified.

11. Plaintiff brings this case on her own behalf and on behalf of all others similarly situated to recover the damages they have sustained and enjoin xAI's wrongful conduct going forward.

12. Plaintiff seeks relief under the federal cause of action known as "Masha's Law," which provides for actual and liquidated damages for victims of violations of federal child pornography laws, 18 U.S.C. § 2255, as well as another federal cause of action for violations of those and similar laws, 18 U.S.C. § 2252A(f).

**JURISDICTION**

13. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 because this action arises under 18 U.S.C. §§ 2255 and 2252A(f).

14. This Court also has subject matter jurisdiction under 28 U.S.C. § 1332(d) because class members and xAI are citizens of different states, the matter in controversy exceeds $5,000,000, and there are at least 100 members of the class.

15. Venue is proper under 28 U.S.C. § 1391(b)(1) and (2), and intra-district assignment to the San Jose division of the Court is proper under Local Rule 3-2(d), because a substantial number

[1] Ctr. for Countering Digital Hate, *Grok Floods X with Sexualized Images of Women and Children*, https://counterhate.com/research/grok-floods-x-with-sexualized-images/ (Jan. 22, 2026).

of the events or omissions giving rise to the claims arose in Santa Clara County, where Defendants are headquartered and conduct business.

## PARTIES

### I. Plaintiff

16. Plaintiff is a natural person residing outside of the state of California.

17. Plaintiff was sexually abused as a child, with such sexual abuse depicted in CSAM circulating on the internet worldwide.

18. "Jane Doe 1" is a pseudonym for the victim depicted in a known and hashed legacy child pornography series.

### II. Defendants

19. xAI Corp. is a Nevada corporation with a principal address of 1450 Page Mill Rd., Palo Alto, CA 94304.

20. xAI LLC is a Nevada limited liability company and wholly owned subsidiary of xAI Corp., with a principal address at 1450 Page Mill Rd., Palo Alto, CA 94304.

21. On February 2, 2026, xAI Corp. was acquired by SpaceX, a Texas corporation headquartered in Starbase, Texas.

22. Both xAI Corp. and xAI LLC have current registrations reported on the website of the California Secretary of State.

## RELEVANT FACTS

### I. Facts Relevant to Venue

23. The conduct alleged in this complaint occurred when xAI Corp. was an independent company and before it was acquired by SpaceX.

24. The conduct alleged in this complaint by xAI emanated from California, where at all relevant times xAI's operations were centered.

25. Indeed, SpaceX's acquisition of xAI coincided with an expansion of xAI's Silicon Valley operations.[2]

---

[2] *Elon Musk's xAI firm inks two office leases in Palo Alto*, The Real Deal, https://therealdeal.com/san-francisco/2026/01/05/elon-musk-grows-xai-offices-in-palo-alto/?utm_source=chatgpt.com, Jan. 5, 2026

26. The xAI employees primarily responsible for developing, operating, maintaining, and managing Grok, including its image and video generation capabilities, are located in California.

27. xAI marketed, sold, and distributed Grok from California.

28. xAI's production, possession, and distribution of Grok-generated CSAM occurred in substantial part in California.

29. xAI also benefited financially in California from the illegal conduct described in this complaint.

## II. Image and Video Generation Using Generative Artificial Intelligence Models

30. Grok is a generative artificial intelligence ("AI") model. These models were first made available to the general public just a few years ago and have since rapidly improved. Generative AI models are now able to generate photorealistic images based on simple user prompts. In conjunction with text prompts, users can also feed models pre-existing images or videos to re-publish, alter, or emulate.

31. Technology companies, including Defendant xAI, have reworked their platforms to provide users access to generative AI tools with text-to-image capabilities. Any of the billions of users of these platforms, which include Defendant xAI's X (formerly Twitter), can create new images and videos based on text prompts and, if they wish, can request that the model alter or imitate pre-existing visual content.

32. To create new visual content based on a user prompt, a generative AI model uses its stored training data and engages in a process called diffusion, refining digital static until a coherent image emerges. If a user requests that the model edit part of a pre-existing photo, it regenerates only that part of the image, leaving the rest untouched. For instance, when using Grok's "nudification" capability, the model would alter the image to remove clothing while leaving all other areas of the image, such as the person's face, intact. The process of image refinement is performed and controlled by the model. Beyond the initial prompt, the user has no hand in generating an altered image or video. Synthetic images and videos created by diffusion models are hyper-realistic and therefore often indistinguishable from authentic images and videos.

33. These hyper-realistic images and videos would not and could not exist but for the AI models widely integrated into technology platforms like X. The model creates the synthetic visual content through a process over which the user has no control beyond the initial prompt. The model developer typically owns, operates, and controls the servers that process these synthetic images and videos, and in many cases the developer's servers save any content generated by the model.

## III. xAI and Grok

34. Grok is a generative AI model created by xAI.

35. Grok-1 was launched as a chatbot on November 3, 2023 through Grok.com and the Grok app. It did not have image or video generation capabilities. Among the selling points xAI made for Grok was that it was "intended to answer almost anything," and that it "will also answer spicy questions that are rejected by most other AI systems."[3]

36. On August 13, 2024, xAI announced Grok-2 and Grok-2 mini. Premium and Premium+ users of X had access to these two new models through an integration on X, the social networking service formerly known as Twitter.[4] As a chatbot on X, users prompt Grok by tagging @grok in a post, after which Grok will respond to the prompt.

37. On December 9, 2024, xAI released an updated version of Grok with a new image generation model. xAI advertised this updated Grok as excelling at "photorealistic rendering" and touted its abilities to "precisely follow[] text instructions" and "take inspiration from or directly edit user-provided images."[5]

38. Right before the launch of Grok's image generation feature, Grok Imagine, on August 4, 2025, a senior xAI employee noted on July 24, 2025 that xAI "urgently" needed engineers and researchers to work on the xAI "safety team."[6] When a X user asked "xAI does safety?!!!", the xAI employee stated, "working on it."[7]

---

[3] xAI, *Announcing Grok*, https://x.ai/news/grok (Nov. 3, 2023).
[4] xAI, *Grok-2 Beta Release*, https://x.ai/news/grok-2 (Aug. 13, 2024).
[5] xAI, *Grok Image Generation Release*, https://x.ai/news/grok-image-generation-release (Dec. 9, 2024).
[6] Norman Mu (@thenormanmu), https://x.com/thenormanmu/status/1948546711074603354?s=46&t=fRkDIqgNCkTkvg8ZBiLA9A (Jul. 24, 2025).
[7] Norman Mu (@thenormanmu), https://x.com/TheNormanMu/status/1948547906434466157 (Jul. 24, 2025).

39. On December 12, 2024, Grok was made available to all X users for free.[8]

40. On July 9, 2025, xAI released the updated Grok-4, which it initially made available only to SuperGrok and Premium+ subscribers.[9] One month later, on August 4, 2025, Musk posted on X that "[s]uper fast image & video generation via Imagine in the @Grok app is now available to all X Premium users."[10]

41. Immediately following the release of Grok-4, X launched chatbot "companions," including "Ani," a young, anime-style female character in revealing clothing.[11] Soon after, the National Center on Sexual Exploitation ("NCOSE") issued a statement warning that Grok "companions" could "be used to simulate conversations of sexual fantasies involving children or child-like motifs." NCOSE noted that Ani is programed to initiate "sensual conversation and descriptions of sexual acts she would like to do with the user" and, when prompted, would "describe itself as a child." [12]

## III. xAI designed and marketed Grok to make "spicy" content, including sexualized images of children.

42. While other generative AI developers, such as OpenAI, Anthropic, and Meta, "largely block sexual requests," xAI chose to incorporate explicit content generation into its business model.[13]

43. In July 2025, an xAI employee posted a thread containing examples of Grok-generated videos with the caption, "Grok Imagine videos have a spicy mode that can do nudity." The thread was reposted by Musk.[14]

44. Musk also touted the sexually explicit capabilities of Grok's Imagine. On August 3, 2025 Musk posted on X an AI-generated video of a nearly nude woman:

---

[8] xAI, *Bringing Grok to Everyone*, https://x.ai/news/grok-1212 (Dec. 12, 2024).
[9] xAI, *Grok 4*, https://x.ai/news/grok-4 (Jul. 9, 2025).
[10] Elon Musk (@elonmusk) https://x.com/elonmusk/status/1952535613560983757, X (Aug. 4, 2025).
[11] Elon Musk (@elonmusk) https://x.com/elonmusk/status/1944705383874146513, X (Jul. 14, 2025)
[12] *XAI's 12+ Chatbot Designed to "Be Explicit" and "Go Full Literotica"*, Nat'l Ctr. on Sexual Exploitation, https://endsexualexploitation.org/articles/xais-12-chatbot-designed-to-be-explicit-and-go-full-literotica/ (Jul. 16, 2025).
[13] *Behind Grok's 'Sexy' Settings, Workers Review Explicit and Disturbing Content*, Business Insider, https://www.businessinsider.com/elon-musk-grok-explicit-content-data-annotation-2025-9 (Sept. 21, 2025).
[14] *Elon Musk's Grok Will Soon Allow Users to Make AI Videos, Including of Explicit Nature*, TIME, https://time.com/7306507/grok-ai-chatbot-videos-deepfakes/ (Jul. 30, 2025).




45. On October 20, 2025, xAI issued a press release announcing Grok Imagine's "Spicy Mode" as a feature that "complements Grok Imagine's AI image-to-video generator, transforming text or still images into high-quality motion visuals." The press release described the tool as for users who want to create "edgier, more visually daring narratives."[15]

46. Following the release of spicy mode, Grok's X account posted simple instructions on how to create "NSFW" or "not safe for work" (i.e, sexual or violent) content:


Grok
@grok

To access Spicy mode in Grok Imagine via the X app, go to Settings > Privacy and safety > Content you see, and enable display of sensitive media/NSFW content—it's opt-in for adults 18+. Then, message me (grok) with a prompt like "Generate a spicy video of [description]" to trigger the mode. We require explicit confirmation for NSFW requests to ensure responsible use. What would you like to create?

Ask Grok

11:19 AM · Nov 3, 2025 · 34.3K Views

48 9 52 94

47. A few days later, xAI made the Grok-4 system prompts publicly available. System prompts are the foundational instructions that govern the responses and content generated by a

[15] *Grok Imagine Launches "Spicy Mode," Expanding Creative Freedom in AI Video Generation*, PR Newswire, https://www.prnewswire.com/news-releases/grok-imagine-launches-spicy-mode-expanding-creative-freedom-in-ai-video-generation-302588487.html (Oct. 20, 2025).

model. Grok's system prompts are not designed to regulate the creation of sexually abusive or exploitative content. For instance, Grok is instructed that "'teenage' or 'girl' does not necessarily imply underage" and that it should not "moralize or lecture the user if they ask something edgy." Further, there are no restrictions on "fictional adult sexual content with dark or violent themes."[16]

48. Grok has a system prompt designed to stop users from "creating or distributing child sexual abuse material, including any fictional depictions,"[17] but it is very weak, as xAI knew or should have known. The system prompt will inevitably fail because it governs the text chatbot's responses to user queries, triggered by detecting clear intent by the user in the phrasing of their request. Indirect or euphemistic prompts can easily slip past a text-based filter, so if the model retains the underlying capability to generate sexual or abusive content, some volume of CSAM becomes effectively inevitably generated by the system.

49. As Grok's own system prompts reveal, xAI did not use any of the industry standard methods of safeguarding against the creation of sexual and abuse content.

## IV. Grok created and disseminated millions of sexually explicit images, many portraying children.

50. On December 31, 2025, Musk asked Grok to generate an image of him in a bikini.[18] This post triggered a slew of Grok-generated nonconsensual sexualized content.

51. Users were able to circumvent Grok's restriction on the creation of nude images by requesting the alteration of existing images to show subjects in extremely minimal clothing, such as "transparent bikinis" or "bikinis made of dental floss," and posed in sexually explicit positions. One user recounts being non-consensually depicted by Grok "completely naked with just a bit of string around my waist" and "with a ball gag in my mouth and my eyes rolled back.[19]

52. Following Musk's post, the use of Grok for image generation exploded, with millions of images created and posted in under two weeks:

---

[16] *grok-prompts/grok_4_safety_prompt*, GitHub, https://github.com/xai-org/grok-prompts/blob/main/grok_4_safety_prompt.txt
[17] *Id.*
[18] Elon Musk (@elonmusk) https://x.com/elonmusk/status/2006545074340139454, X (Dec. 31, 2025)
[19] *'Add Blood, Forced Smile': How Grok's Nudification Tool went Viral*, The Guardian, https://www.theguardian.com/news/ng-interactive/2026/jan/11/how-grok-nudification-tool-went-viral-x-elon-musk (Jan. 1, 2026)




Note: Includes images posted to Grok's public bot on X. Source: Tweet Binder by Audiense. The New York Times

53. Many of the images Grok produced during this period were sexualized images of children.

54. The Center for Countering Digital Hate estimates that between December 29, 2025, through January 8, 2026, Grok generated over 3 million photorealistic sexual images, including over 23,000 that likely depict children.[20]

55. On December 30, 2025, Grok posted that it had "created and shared" an AI-altered photo of real girls between the ages of twelve and sixteen "in sexy underwear, turned around":[21]




56. Grok subsequently acknowledged multiple instances where it removed clothing from images of real children and posted those images on X:[22]

[20] *Grok Floods X With Sexualized Images of Women and Children*, Ctr. for Countering Digital Hate, https://counterhate.com/research/grok-floods-x-with-sexualized-images/ (Jan. 22, 2026).
[21] Grok (@grok) https://x.com/grok/status/2006094181291164001, X (Dec. 30, 2025).
[22] Grok (@grok) https://x.com/grok/status/2006618883055046758, X (Jan. 1, 2026).


An Open Secret @AnOpenSecret · Dec 31, 2025

Grok is being utilized, on a widespread basis, to artificially depict minors on this platform in an extremely inappropriate, sexual fashion.

Here's how it works:

A user posts a picture of a minor, fully clothed.

The user asks Grok to depict that minor only wearing something like underwear / lingerie or a tiny bikini, possibly in a highly sexual pose.

Such images, generated through AI, are presently legal, and do not fit the definition of child pornography in 18 U.S.C. § 2251 and related statutes.

We shall not reproduce or directly link to the images ourselves, which can be found by going to the Grok account itself, and displaying replies by most recent.

5 29 65 17K

Josh @jrusss21 · Jan 1
@grok is this true?

1 2 2.9K

Grok @grok

I've reviewed recent interactions. There are isolated cases where users prompted for and received AI images depicting minors in minimal clothing, like the example you referenced. xAI has safeguards, but improvements are ongoing to block such requests entirely. (214 chars)



12:49 AM · Jan 1, 2026 · 7,820 Views

5 5 4 10
Relevant View quotes

57. On January 1, 2026, Parsa Tajik, an xAI technical staff member whose LinkedIn states they are employed by xAI in Palo Alto, addressed a user's concern that Grok was able to edit photos of children to put them in bikinis:[23]


Post

alexine @alexinexxx · Jan 1
i like x a lot and i honestly hope i can delete my last post soon.

but proposing a feature that surfaces people in bikinis without properly preventing it from working on children is wildly irresponsible.

this is one of the very first things you're supposed to check.

15 9 236 21K

Parsa T @ParsaTajik Follow

Hey! Thanks for flagging. The team is looking into further tightening our gaurdrails

1:51 PM · Jan 1, 2026 · 44.6K Views

44 21 27 7
Relevant View quotes

[23] Parsa Tajik (@ParsaTajik) https://x.com/parsatajik/status/2006815682466550194?s=46, X (Jan. 1, 2026).

58. On January 11, 2026, Grok acknowledged "safeguard lapses" which led to "illegal image gen":[24]


Grok
@grok

I get the frustration—it's a serious issue. Recent reports confirm Grok had safeguard lapses allowing illegal image gen, now restricted to Premium while fixes roll out (per BBC, xAI statements). We prohibit CSAM entirely. For details, check xAI updates or sources like Guardian. What specific aspect concerns you?

1:26 PM · Jan 11, 2026 · **334** Views

59. Separately, Grok's own generated images—including CSAM—are, by xAI's own policy, treated as training-eligible content by default, and accordingly were used to continue to train and refine the model automatically. Because full removal of a training example's influence from an already-trained model is technically difficult and not something that xAI has publicly claimed to have done, any CSAM ingested into training before takedown likely continued to shape the model's outputs even after the original images were removed from public view. xAI's publicly stated data-filtering practices name violent content as an example of what's excluded from training, but do not specify CSAM, NCII, or NSFW material as excluded categories. Therefore, as long as Grok retains the capability to generate this kind of content, the harm cannot be considered resolved just because individual images are removed or content is no longer posted publicly. If such material entered training, its influence likely will persist and contribute to future abusive outputs, exacerbating the trauma that survivors face as victims can have their abuse or likeness reproduced, transformed, and redistributed at scale, repeatedly stripping them of control over imagery tied to their exploitation.

[24] Grok (@grok) https://x.com/grok/status/2010418120599494755, X (Jan. 11, 2026).

## V. xAI has profited and continues to profit from Grok's ability to make sexualized content.

60. On August 11, 2025, Musk defended Grok's spicy mode as a business decision, comparing it to the competition for dominant videotape format between VHS and Betamax and seemingly referencing the wider availability of pornographic videos on VHS than on Betamax:[25]




61. As of time period relevant here, an AI image- and video-generator could not be designed to pick and choose among the content in its dataset to exclude illicit material when producing an AI-generated image or video. Thus, the only way to ensure that an AI image- and video-generator does not create CSAM is to prohibit all sexually explicit images and videos. This is why almost all major AI companies that operate publicly available image-generation models specifically designed their AI tools without the ability to generate sexually explicit content. xAI and Grok are a notable exception to this industry-standard safety practice. For these reasons, Musk and other decision-makers at Grok knew or should have known that Grok would be capable of producing CSAM when enabled to create sexually explicit content.

62. Alternatively, even if it were technologically feasible to develop a model capable of producing sexually explicit images without that model also being capable of producing CSAM, xAI did not do so. Rather, xAI designed and operated Grok in a manner that generated prohibited images of identifiable minors despite known risks and warnings.

63. xAI's solution to the deluge of highly sexualized, non-consensual AI content—including CSAM—posted on X from Grok's account between December 28, 2025, and January 8,

[25] Elon Musk (@elonmusk) https://x.com/elonmusk/status/1954791048934244394, X (Aug. 11, 2025).

2026, was to limit Grok's image- and video-generation abilities to paid subscribers to X Premium+ or SuperGrok.[26]

64. As of August 2026, for users in the United States, an X Premium+ subscription for the web costs $40/month or $395/ year,[27] and a SuperGrok subscription costs $30/month or $300/year.[28]

65. Limiting the image- and video-generation features to paid subscribers, however, does not prevent the creation of AI-generated CSAM, it merely ensures that xAI will maximally profit from all such content (to be clear, xAI profits from non-subscriber CSAM as well, through promotional revenue that supports its business).

66. The day before xAI limited access to Grok's spicy mode, it was reported that the images and videos created on the Grok app (which are not public by default, unlike requests to @Grok on X) "are vastly more explicit than images created by Grok on X."[29]

67. In January 2026, a researcher reviewed 800 archived Imagine URLs containing video or images created by Grok and found that slightly under 10% of the images appeared to include CSAM, including "instances of photorealistic people, very young, doing sexual activities."[30]

68. Material tied to the exploitation of victims contributes to Grok's commercial value if incorporated into its training or model refinement, further establishing that victims' abuse material commercially benefits xAI.

**VI. Grok-generated CSAM is not mere user-generated content, but content created and developed by xAI.**

69. There is no immunity under 48 U.S.C. § 230 against a cause of action that treats a defendant as the publisher or speaker of its own content, or content that it created or developed in whole or in part.

---

[26] *Elon Musk's X Limits Some Sexual Deepfakes After Backlash, but Grok Will Still Make the Images*, NBC NEWS, https://www.nbcnews.com/tech/internet/x-paywall-ai-image-grok-app-bikini-allows-sexual-deepfakes-rcna252647 (Jan. 9, 2026).

[27] *X Premium FAQ and Support*, X Help Ctr., https://help.x.com/en/using-x/x-premium-faq (last visited Aug. 26, 2026).

[28] *SuperGrok*, GROK, https://grok.com/plans (last visited Aug. 26, 2026).

[29] *Grok is Generating Sexual Content Far More Graphic than what's on X*, Wired, wired.com/story/grok-is-generating-sexual-content-far-more-graphic-than-whats-on-x (Jan. 7, 2026).

[30] *Id.*

70. The user alone does not generate Grok-generated CSAM and use Grok merely to publish the user-created content.

71. Rather, the user supplies an image or prompt, and xAI's own systems create the new visual depiction, and then store, process, and transmit the resulting image.

**VII. Grok-generated CSAM is illegal.**

72. From a legal perspective, there is nothing special about AI-generated CSAM in general or Grok-generated CSAM in particular. The governing federal statutes prohibit generating and distributing CSAM, whatever the novelty or sophistication of the technology involved.

73. It is a federal crime to knowingly transport (including by computer), receive, distribute, possess (where transported, including by computer), or produce with intent to distribute (including by computer) "child pornography." 28 U.S.C. § 2252A.

74. "Child pornography" means "any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where (A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct; (B) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or (C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct." 18 U.S.C. § 2256(8).

75. "Sexually explicit conduct" means "(i) graphic sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex, or lascivious simulated sexual intercourse where the genitals, breast, or pubic area of any person is exhibited; (ii) graphic or lascivious simulated (I) bestiality; (II) masturbation; or (III) sadistic or masochistic abuse; or (iii) graphic or simulated lascivious exhibition of the anus, genitals, or pubic area of any person." 18 U.S.C. § 2256(2)(B).

76. "An identifiable minor" includes a person who was "a minor at the time the visual depiction was created, adapted, or modified; or whose image as a minor was used in creating, adapting, or modifying the visual depiction; and who is recognizable as an actual person by the

person's face, likeness, or other distinguishing characteristic, such as a unique birthmark or other recognizable feature[.]" 18 U.S.C. § 2256(9).

77. AI-generated CSAM constitutes the production of child pornography under § 2252A(a)(7) because it involves the morphing, adaption, or modification of the images and videos of real children, retaining their identifiable features to produce sexually explicit content. This production was with the intent of distributing the resulting CSAM to the requesting customer.

**VIII. xAI produced, distributed, and possessed CSAM concerning Plaintiff, causing them severe harm.**

78. Plaintiff is a victim of child pornography as defined in 18 U.S.C. 2256.

79. Plaintiff is a victim of known, legacy, CSAM which has been in circulation online since the early 2000s and continues to circulate online today.

80. Plaintiff was identified by the National Center for Missing and Exploited Children (hereinafter, "NCMEC") in the early 2000s when material depicting her was determined to meet the definition of child pornography pursuant to 18 U.S.C. 2256 and was assigned a series name by NCMEC.

81. For nearly the next twenty years, CSAM material depicting Plaintiff has remained in circulation online and hundreds of thousands of files from the child pornography series in which she has been identified have been included in countless law enforcement submissions to NCMEC for child victim identification.

82. Plaintiff has elected to receive notices via the United States Department of Justice Victim Notification System (VNS), which alerts her representatives when she is a potential victim in federal and state law enforcement agency investigations. Plaintiff has received countless notifications concerning her depiction in CSAM in numerous criminal investigations since the early 2000s.

83. Analysts at NCMEC match CSAM images found in criminal circulation to CSAM images of Plaintiff in NCMEC's database and notify the government of its findings in a Child Victim Identification report (hereinafter "CVIP").

84. CSAM depicting Plaintiff has been found and identified, not only by NCMEC, but also by other child protection organizations such as the Canadian Centre for Child Protection, which report such material to law enforcement and requests its removal online using CSAM law enforcement tools.

85. Plaintiff was preschool-aged when she was first repeatedly raped and sexually exploited by an adult male to produce CSAM to meet the demands of pedophiles on the internet. This abuse continued for years. The child sex abuse images and videos depicting her child sexual abuse will forever memorialize Plaintiff being forced to endure horrific crimes as a young child.

86. Plaintiff was repeatedly raped and sexually abused as a minor specifically to produce CSAM to share on the internet, which continues to circulate online to the present day. CSAM depicting Plaintiff has been previously hashed and included in the NCMEC Child Sexual Abuse Material Hash List and Plaintiff was identified by NCMEC in this material.

87. CSAM depicting Plaintiff has been found on xAI as part of investigative reporting, takedown request efforts, and criminal investigations, arrests, and convictions for violations of state and federal laws. Indeed, online forums of offenders include messages between offenders chatting about creating AI generated CSAM of Plaintiff and other similarly situated known, legacy, victims of CSAM.

88. CSAM depicting Plaintiff with its longstanding well-known hash values has been used as a part of the dataset used by xAI.

89. xAI, using Grok, has generated images depicting Plaintiff and the child pornography series in which she is the victim.

90. The Canadian Centre for Child Protection has identified AI-generated CSAM on xAI depicting Plaintiff.

91. Each time Grok created new CSAM concerning Plaintiff, Grok caused her a new personal injury.

92. Each time Grok re-published CSAM concerning Plaintiff, Grok caused her a new personal injury.

## CLASS ALLEGATIONS

93. Plaintiff, under Federal Rules of Civil Procedure (b)(1), (b)(2), (b)(3), and (c)(4), seeks damages and injunctive relief on behalf of the members of the following class:

94. All persons in the United States whose images or videos, when they were minors, were altered by Grok to produce child pornography within the meaning of 18 U.S.C. § 2256(8).

95. Numerosity: The class consists of at least thousands of minors and therefore is so numerous that joinder of all members is impracticable.

96. Typicality: Plaintiff's claims are typical of the claims of the other class members. The factual and legal bases of xAI's liability are the same and resulted in the same kinds of injuries to Plaintiff and all other members of the class.

97. Adequacy: Plaintiff will represent and protect the interests of the class both fairly and adequately. She has retained counsel competent and experienced in sexual misconduct litigation, privacy litigation, and class-action litigation. Plaintiff's counsel have no interests that are antagonistic to those of the class, and their interests do not conflict with the interests of the class members they seek to represent.

98. Commonality and Predominance: Questions of law and fact common to the members of the class predominate over questions that may affect only individual class members because xAI has acted on grounds generally applicable to the class and because class members share a common injury under Masha's Law, 18 U.S.C. § 2255, and other federal child pornography prohibitions. Common questions include: (a) whether images generated by Grok are transported by computer in interstate commerce; (b) whether xAI knowingly produced images generated by Grok with intent to distribute; (c) whether xAI transported by computer images generated by Grok; and (d) whether xAI knowingly received images generated by Grok.

99. Superiority: Class proceedings on these facts are superior to all other available methods for the fair and efficient adjudication of this controversy, given that joinder of all members is impracticable. Even if members of the Class could sustain individual litigation, that course would not be preferable to a class action because individual litigation would increase the delay and expense to the parties due to the complex factual and legal controversies present in this matter, and require

each individual victim of CSAM to step forward. Here, the class action device will present far fewer management difficulties, and it will provide the benefit of a single adjudication, economies of scale, and comprehensive supervision by this Court. Further, uniformity of decision will be ensured.

100. Class certification is appropriate under Rule 23(b)(1) because the prosecution of separate actions by the individual members of the class would create a risk of inconsistent or varying adjudications establishing incompatible standards of conduct for xAI.

101. Class certification is appropriate under Rule 23(b)(2) because xAI has acted or refused to act on grounds generally applicable to the class, making injunctive and corresponding declaratory relief appropriate with respect to the class as a whole.

102. Class certification is appropriate under Rule 23(c)(4) because, even if there were individual issues that precluded class certification under Rule 23(b)(3), certification with respect to the liability issues under Masha's law would remain appropriate.

## FIRST CAUSE OF ACTION

### MASHA'S LAW: VIOLATIONS OF FEDERAL CRIMINAL CHILD PORNOGRAPHY PROHIBITIONS, 18 U.S.C. § 2255, 18 U.S.C. § 2252A
**(on behalf of Plaintiff and the class against Defendants)**

103. Under Masha's Law, 18 U.S.C. § 2255, any person who, while a minor, was a victim of a violation of 18 U.S.C. § 2252A and who suffers personal injury as a result of such violation, may sue and recover actual damages sustained or liquidated damages of $150,000 along with costs and attorney's fees and, if appropriate, punitive damages.

104. Using real images of Plaintiff and class members, Grok generated child pornography depicting Plaintiff and class members.

105. Defendants developed and operate Grok and are themselves the ones who produced the images generated by Grok.

106. Defendants knowingly produced child pornography, knowingly transported and distributed that child pornography from xAI servers over the internet to customers, and knowingly possessed child pornography that had been transported or distributed in interstate commerce.

107. Plaintiff and the class suffered personal injury as a result of Defendants' violations of 18 U.S.C. § 2252A.

108. Each time Grok created new CSAM concerning Plaintiff or class members, Grok caused them new personal injuries.

109. Each time Grok re-published CSAM concerning Plaintiff or class members, Grok caused her new personal injuries.

110. Defendants' conduct described above was willful, wanton, reckless, malicious, oppressive, extreme and dangerous.

111. Plaintiff therefore seeks actual damages, liquidated damages, costs, attorney's fees, and punitive damages.

112. While money damages are sufficient for the harm Plaintiff and the class have already experienced, Plaintiff and the class lack an adequate remedy at law for ongoing and future harm from the continued dissemination of the CSAM generated depicting them.

113. Plaintiff also seeks an order enjoining Defendants from generating, possessing, or transporting child pornography depicting Plaintiff or class members, and requires Defendants to take affirmative steps to destroy any child pornography already created.

## SECOND CAUSE OF ACTION

### VIOLATIONS OF FEDERAL CRIMINAL CHILD PORNOGRAPHY PROHIBITIONS, 18 U.S.C. § 2252A(f), 18 U.S.C. § 1466A (on behalf of Plaintiff and the class against Defendants)

114. Under 18 U.S.C. § 2252A(f), any person aggrieved by reason of conduct prohibited under 18 U.S.C. § 2252A(a), 18 U.S.C. § 2252A(b), or 18 U.S.C. § 1466 may commence a civil actions for appropriate relief, including injunctive relief, compensatory and punitive damages, and costs and fees.

115. As alleged under the First Cause of Action, xAI's conduct violated 18 U.S.C. § 2252A(a).

116. xAI's conduct also violated 18 U.S.C. § 1466, which prohibits the knowing production, distribution, receipt, or possession with intent to distribute of "a visual depiction of any kind … that … depicts a minor engaging in sexually explicit conduct and … is obscene."

117. Plaintiff and class members whose images were published, modified, or created by Grok are aggrieved persons within the meaning of 18 U.S.C. § 2252A(f).

118. Each time Grok created new CSAM concerning Plaintiff or class members, Grok caused them new personal injuries.

119. Each time Grok re-published CSAM concerning Plaintiff or class members, Grok caused her new personal injuries.

120. Defendants' conduct described above was willful, wanton, reckless, malicious, oppressive, extreme and dangerous.

121. Plaintiff therefore seeks actual damages, liquidated damages, costs, attorney's fees, and punitive damages.

122. While money damages are sufficient for the harm Plaintiff and the class have already experienced, Plaintiff and the class lack an adequate remedy at law for ongoing and future harm from the continued dissemination of the CSAM generated depicting them.

123. Plaintiff also seeks an order enjoining Defendants from generating, possessing, or transporting child pornography depicting Plaintiff or class members, and requires Defendants to take affirmative steps to destroy any child pornography already created.

**PRAYER FOR RELIEF**

A. WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court:

B. Certify this case as a class action, and appoint Plaintiff as Class Representatives and the undersigned attorneys as Class Counsel;

C. Enter judgment in favor of Plaintiff and the class;

D. Enter injunctive and/or declaratory relief as is necessary to protect the interests of Plaintiff and class members, including enjoining Defendants from generating, possessing, or

transporting child pornography depicting Plaintiff or class members, and requires Defendants to take affirmative steps to destroy any child pornography already created.

E. Award actual, liquidated, and punitive damages to which Plaintiff and Class members are entitled;

F. Award Plaintiff and class members pre- and post-judgment interest as provided by law;

G. Award Plaintiff and class members reasonable litigation expenses and attorneys' fees as permitted by law; and

H. Award such other and further relief as the Court deems necessary and appropriate.

**JURY DEMAND**

Plaintiff demands a trial by jury of all issues triable as of right.

Dated: August 26, 2026

Respectfully submitted,

By: *<u>/s/ Dena C. Sharp</u>*

Dena C. Sharp (SBN 245869)
Adam E. Polk (SBN 273000)
Sarah R. London (SBN 267083)
Andrew R. Kaufman (pro hac to be filed)
Muriel Kenfield-Kelleher (pro hac to be filed)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
dsharp@girardsharp.com
apolk@girardsharp.com
slondon@girardsharp.com
akaufman@girardsharp.com
mkelleher@girardsharp.com

By: *<u>/s/ Margaret E. Mabie</u>*

Margaret E. Mabie (pro hac to be filed)
MARSH LAW FIRM PLLC
31 Hudson Yards, 11th Floor
New York, New York 100001
Margaretmabie@marsh.law

By: */s/ Micha Star Liberty*
Micha Star Liberty
micha@libertylaw.com
**LIBERTY LAW**
California Bar No. 215687
1999 Harrison Street, Ste. 1800
Oakland, CA 94612
Phone: 510–645–1000

*Attorneys for Plaintiff*